# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**STEPHEN H. GRAVES**,

    *Plaintiff,*

    v.

**DISTRICT OF COLUMBIA**,

    *Defendant.*

Civil Action No. 07-00156 (CKK)

## MEMORANDUM OPINION
(April 14, 2011)

Plaintiff Stephen H. Graves ("Graves") commenced this action against the District of Columbia (the "District") on January 22, 2007, claiming that he was subjected to a hostile work environment based on race during the course of his two-decade career with the District of Columbia Fire and Emergency Services Department, in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and § 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). Presently before the Court is the District's [20] Motion for Summary Judgment. Based on the parties' submissions, the relevant authorities, and the record as a whole, the Court shall deny the District's motion in its entirety.[1]

---

[1] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Docket No. [20]; Def.'s Stmt. of Material Facts Not in Genuine Dispute ("Def.'s Stmt."), Docket No. [20]; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Docket No. [24]; Pl.'s Counter-Stmt. of Material Facts as to Which There Exist No Genuine Grounds for Dispute ("Pl.'s Resp."), Docket No. [24].

# I. PRELIMINARY MATTERS

At the outset, five overarching observations must be made about the limitations of the District's Motion for Summary Judgment. Succinctly stated, the approach the District has taken in briefing the instant motion leaves much to be desired.

First, nearly all of the arguments tendered by the District in support of its motion are premised, at least to some degree, on the erroneous assumption that Graves intends to pursue individual claims of discrimination for each of the employment-related incidents identified in his Complaint. But in opposition to the instant motion, Graves has made it clear that he only intends to pursue two factually coextensive hostile work environment claims in this action, one arising under Title VII and a second arising under Section 1981, and he expressly disavows an intention to pursue individual claims of discrimination for each separate incident contributing to the allegedly hostile work environment. As a result, the vast majority of the District's motion speaks to claims that simply are not at issue in this action, with surprisingly little attention paid to the only claims that are at issue—that is, Graves' hostile work environment claims.

Second, of the approximately eighty-one incidents that collectively comprise the hostile work environment allegedly suffered by Graves during his employment, only a handful receive even passing mention in the District's moving papers. Specifically, the District has tailored its arguments to the nine incidents that are expressly identified in Graves' Complaint, leaving altogether unaddressed over seventy other incidents that Graves identified as part of his hostile work environment claim during the course of discovery in this action. The omission is no small matter; having failed to account for all or even a majority of these incidents, the District's motion does not speak to the totality of the hostile work environment allegedly suffered by Graves.

Third, with few exceptions, the instant motion turns on straightforward questions of law, such as whether Graves' claims are barred by the applicable statute of limitations and whether his allegations, if assumed to be true, are sufficient to support a claim for relief. Where the District does address a particular incident claimed by Graves to have contributed to the hostile work environment he allegedly suffered, the incident is invariably described in terms of Graves' characterization of the incident, providing the Court with little factual context to resolve the instant motion and leaving the Court with little sense as to what extent the District will controvert Graves' characterization of the events should this action proceed to trial. In other words, the District has more or less assumed Graves' factual allegations to be true for the present moment, making this motion almost more akin to a motion to dismiss for failure to state a claim than a motion for summary judgment. As a result, the factual record presently before the Court is considerably less developed than is typical for a motion for summary judgment in an employment discrimination action.

Fourth, the United States District Court for the District of Columbia has supplemented Rule 56 of the Federal Rules of Civil Procedure with Local Civil Rule 7(h)(1), which requires that each party submitting a motion for summary judgment attach a statement of material facts for which that party contends there is no genuine dispute. The party opposing the motion must, in turn, submit a responsive statement enumerating all material facts which the party contends are genuinely disputed. *See* LCvR 7(h)(1). Where the opposing party has additional facts that are not directly relevant to its response, it must identify such facts in consecutively numbered paragraphs at the end of its responsive statement of facts. If additional factual allegations are made, the opponent must file a responsive statement of its own. This well-reasoned rule "places

the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996). The parties in this action have been cautioned on more than one occasion that this Court strictly adheres to the dictates of Local Civil Rule 7(h)(1) when resolving motions for summary judgment. *See* Scheduling & Procedures Order (June 5, 2007), Docket No. [7], at 4-5; Scheduling & Procedures Order (July 21, 2008), Docket No. [18], at 1-2. Nevertheless, the District has failed to file a statement responding to the additional factual allegations identified by Graves in opposition to the instant motion. In an exercise of its discretion, the Court shall treat those factual allegations as admitted for purposes of resolving the instant motion. However, those factual allegations are few in number and relatively non-controversial when considered in the full context of the instant motion, meaning that the impact of this conclusion is *de minimis*.

Fifth, and finally, the District has elected not to file a reply memorandum responding to the arguments raised by Graves in opposition to the instant motion, despite having more than ample opportunity to do so. While that is certainly the District's right, the failure is particularly problematic in this case because, in opposition to the instant motion, Graves corrects certain misunderstandings underlying the District's opening memorandum, clarifies the scope of the claims that he intends to pursue in this action, and explains why the District's arguments are not tailored to speak to those claims. The upshot is that the Court is left with a motion and an opposition that are not in direct conversation.

None of the foregoing is necessarily fatal to the success of the District's motion; to the extent the District is still entitled to judgment as a matter of law in the face of these various

shortcomings, it may secure relief through the vehicle of summary judgment. The Court merely observes that, despite the advanced stage of these proceedings, it remains largely in the dark as to what factual and legal issues are likely to arise at trial or to require greater attention during the course of pretrial proceedings. Nonetheless, the Court shall now turn to the task of delineating the relevant factual and procedural background based upon the limited record presently available.

## II. BACKGROUND

Graves self-identifies as an individual of "mixed race," explaining that he has Native American, African American, and Caucasian heritage. Compl., Docket No. [1], ¶ 6. Graves was formerly employed by the District of Columbia Fire and Emergency Services Department (the "Department"). Def.'s Stmt. ¶ 1; Pl.'s Resp. ¶ 1. Over the course of his two-decade career with the Department, which extended from September 5, 1985 through February 12, 2006, he held a variety of positions and worked at a number of locations. Def.'s Stmt. ¶ 1; Pl.'s Resp. ¶¶ 1, 3.

Graves contends that he was subjected to a hostile work environment throughout his two-decade career. Altogether, he has identified approximately eighty-one separate incidents as the component acts comprising the allegedly hostile work environment at issue in this action. Def.'s Stmt. ¶¶ 2-10; Pl.'s Resp. ¶¶ 1, 3. The first contributing incident is alleged to have occurred within days of his hiring, on or about September 19, 1985, and the final contributing incident is alleged to have occurred shortly before the termination of his employment, on or about September 18, 2005. Pl.'s Resp. ¶ 3. The incidents are of a wide variety and cut a broad swath: some involve physical violence; others involve facially discriminatory comments by subordinates, co-workers, and supervisors; and still others involve allegedly punitive assignments or unjustified disciplinary actions. *Id.* They involve literally dozens of actors working at various

locations, and it is often unclear based on the limited record created by the parties what position a given actor held at the time of the events in question and what that actor's relationship was to Graves at that moment in time. *Id.*

Attempting to identify all of the approximately eighty-one incidents at issue is neither necessary nor helpful in resolving the instant motion. However, the following fifteen incidents provide a useful snapshot of the scope of Graves' hostile work environment claim:[2]

> **September 19, 1985.** While still in training, Graves began to receive racially charged comments, such as, "[Y]ou think you're too good to be black." Pl.'s Resp. ¶ 3.1.
>
> **April 1, 1986.** While working at Engine No. 16, Graves was repeatedly subjected to racially charged comments such as "Light Bright Wanna-be White" and "High Yellow."[3] Pl.'s Resp. ¶ 3.2.
>
> **August 9, 1986.** While requesting assistance from an equal employment opportunity officer, Graves was "rebuffed" and told he was "with the white boys." Pl.'s Resp. ¶ 3.4.
>
> **September 24, 1986.** Graves was criticized by a fire chief "for [his] continued friendship with white firefighters." Pl.'s Resp. ¶ 3.5.
>
> **January 2, 1987.** Racially charged comments became "pervasive," occurred "on a daily basis," and included remarks concerning "the color of [Graves'] skin, eyes and hair." Pl.'s Resp. ¶ 3.8.
>
> **June 1, 1988.** During morning line-up, a captain singled out Graves and remarked, "That's no way for a Black man to look." Pl.'s Resp. ¶ 3.14.
>
> **August 27, 1989.** An emergency medical technician questioned the

---

[2] Because the record created by the parties in connection with the instant motion simply sheds no light on whether there are genuine disputes as to whether and how these incidents actually transpired, the Court, taking its cue from the parties, shall merely set forth a brief description of the incidents as they have been characterized by Graves.

[3] The term "high yellow" has historically been used to refer to light-skinned individuals of African American background, often in a derogatory manner.

authenticity of Graves' African American heritage, and ultimately slapped him across the face after tensions escalated.  Def.'s Stmt. ¶ 2; Pl.'s Resp. ¶¶ 1, 3.16.

**May 10, 1990.**  Following two days of "constant harassment," an African American employee followed Graves to the instructor's office and physically struck him multiple times, causing Graves to suffer a detached retina.  Pl.'s Resp. ¶¶ 3.20, 4.

**April 2, 1995.**  Graves was reassigned to Engine No. 20, marking the beginning of a series of "punitive assignments."  Pl.'s Resp. ¶ 3.32.

**January 28, 1997.**  An African American civilian employee accused Graves of stealing equipment and, when Graves attempted to respond, threw various objects in Graves' direction.  Def.'s Stmt. ¶ 4; Pl.'s Resp. ¶¶ 1, 3.35.

**January 23, 1998.**  Two African American firefighters remarked to Graves that they "had heard that [he] 'treat[ed] white people better than black people and [they] were not going to have it in Southeast.'"  Pl.'s Resp. ¶ 3.39.

**June 19, 1999.**  When Graves told an African American employee that he could not perform certain tasks on work premises while off-duty, the employee responded, "Fuck you faggot mother fucker, fucking white bitch can't tell me shit," and spat in Graves' face.  Def.'s Stmt. ¶ 6; Pl.'s Resp. ¶¶ 1, 3.43.

**December 2, 2000.**  During a meeting with Graves, a battalion fire chief commented, "Graves, a lot of people do not like you because of the color or your skin[.] [I]f you were as dark as me you would not have problems."  Pl.'s Resp. ¶ 3.52.

**May 13, 2003.**  An African American employee remarked in front of third parties that he had punched and spit on Graves in the past and that he would do it again, and described Graves as a "high yellow mother fucker."  Pl.'s Resp. ¶ 3.63.

**July 12, 2005.**  Graves was involved in a physical altercation with an African American lieutenant, during which the lieutenant remarked that he was "going to kick [Graves'] white ass."  Def.'s Stmt. ¶ 10; Pl.'s Resp. ¶¶ 1, 3.79.

According to Graves, this final incident, and the Department's response, was the "last

straw."  He resigned on February 12, 2006.  Def.'s Stmt. ¶ 11; Pl.'s Resp. ¶¶ 1-2.

Graves filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 1, 2005, Def.'s Stmt. ¶ 15; Pl.'s Resp. ¶ 1, alleging that he had "been subjected to a continuing pattern of insults and other on-the-job harassment because of [his] multi-racial background," and that he had "been discriminated against because of [his] race (Caucasian, African American, and Native American)."  Def.'s Stmt. Ex. V at 1.  The EEOC issued Graves a right-to-sue letter on October 24, 2006.  Def.'s Stmt. ¶ 15; Pl.'s Resp. ¶ 1.  He commenced the instant action exactly ninety days later, on January 22, 2007.  *See* Compl.  The parties proceeded to conduct discovery, which, after a series of extensions, finally concluded on May 19, 2008.  *See* Min. Order (Jan. 11, 2008).  On October 10, 2008, the District filed the instant motion.  *See* Def.'s Mem.  Graves filed a timely opposition.  *See* Pl.'s Opp'n.  Although the District sought and received an extension of time to file its reply, *see* Min. Order (Dec. 18, 2008), the District did not file a reply on the designated date or at any time thereafter.  The motion is therefore fully briefed and ripe for adjudication.

### III.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the

relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor.  *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## IV.  DISCUSSION

### A.    *The District Is Not Entitled to Summary Judgment Based on its Contention that Graves' Claims Under Section 1981 and Title VII Are Time-Barred*

The District argues that the vast majority of Graves' claims are time-barred.  But in making this argument, the District erroneously assumes that Graves seeks to pursue individual claims for discrete discriminatory acts, and as a result almost entirely ignores Graves' hostile work environment claims.  When the actual claims at issue in this action are analyzed with reference to the appropriate timeliness standard, it is clear that Graves' claims are timely.

### 1.    **Graves' Brought Suit on His Hostile Work Environment Claims Within the Applicable Statutes of Limitations**

Graves' has asserted two hostile work environment claims in this action, one under Section 1981 and a second under Title VII.  The two claims are subject to two different statutes of limitations.

On the one hand, claims for hostile work environment under Section 1981 are subject to a four-year statute of limitations, *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004), though both parties erroneously assume that the applicable statute of limitations is three years. *See* Def.'s Mem. at 15; Pl.'s Opp'n at 29.  The mistake is not an uncommon one.  Some Section 1981 claims will be subject to a three-year limitations period; others, a four-year limitations period.  This case happens to fall in the latter category.  Once upon a time, federal courts faced with Section 1981 claims were directed to "select the most appropriate or analogous state statute of limitations," whatever the nature of the claim, *Goodman v. Lukens Steel Co.*, 482 U.S. 656,

10

660 (1987), which in the case of the District of Columbia was indeed a three-year statute of limitations, *Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998). But that landscape changed somewhat with the enactment of the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, which added a new subsection to Section 1981—subsection (b)—expanding Section 1981 to reach a universe of post-contract-formation conduct that was previously non-actionable. *Compare Patterson v. McLean Credit Union*, 491 U.S. 164, 177 (1989) (concluding that the pre-amendment Section 1981 did not cover "postformation conduct . . . implicat[ing] the performance of established contract obligations and the conditions of continuing employment."), *with* 42 U.S.C. § 1981(b) ("[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."). Because the amendment to Section 1981 brought about by the Civil Rights Act of 1991 was an expansion and not a clarification of existing law, *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 (1994), some conduct will arise under the pre-amended Section 1981—subsection (a)—and some conduct will arise under post-amendment Section 1981—subsection (b). The distinction is critical in identifying the applicable statute of limitations: if a claim arises under subsection (a), then the district court must select the most appropriate or analogous state statute of limitations; but if a claim arises under subsection (b), then the four-year "catch-all" statute of limitations for any claim arising under a federal statute enacted after December 1, 1990 is triggered. *See* 28 U.S.C. § 1658(a). Claims for hostile work environment involve the sort of post-contract-formation conduct that was not covered by Section 1981 until Congress enacted the Civil Rights Act of 1991—in other words, such claims arise under subsection (b) and the four-year statute of

limitations comes into play. Graves commenced the instant action on January 22, 2007, meaning that his hostile work environment claim under Section 1981 must have accrued on or after January 22, 2003 in order to be timely filed.

On the other hand, in order to recover on a hostile work environment claim under Title VII, a plaintiff must generally file a charge of discrimination with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). In this case, Graves filed the relevant charge of discrimination on August 1, 2005, meaning that his hostile work environment claim under Title VII must have accrued on or after February 2, 2005 in order to be timely.

The District argues that Graves is precluded from seeking relief on discrete acts of discrimination falling outside the applicable limitations period. Def.'s Mem. at 15. While this is undeniably true, and is in fact conceded by Graves, Pl.'s Opp'n at 28, the argument rests on a fundamental misunderstanding as to the claims that are at issue in this action. Graves has made it clear that he does not seek to pursue claims for discrete acts of discrimination in this action, but instead intends to pursue only two factually coextensive hostile work environment claims under Title VII and Section 1981. Id. at 28-30. Therefore, the operative question is whether Graves' hostile work environment claims accrued on or after January 22, 2003, with respect to his Section 1981 claim, and on or after February 2, 2005, with respect to his Title VII claim. In both instances, the question must be answered in the affirmative.

Significantly, although never expressly acknowledged by the District, the timeliness of a hostile work environment claim is determined according to a different standard than the standard governing discrete acts of discrimination. So long as at least one act "contributing to the claim

12

occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 638 n.7 (2007) ("[A]t least some of the discriminatorily-motivated acts predicate to a hostile work environment claim [must] . . . occur within the charging period."), *superseded by statute in part*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 11-2, 123 Stat. 5 (2009). In other words, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period." *Morgan*, 536 U.S. at 105. The relevant inquiry is essentially two-fold: the district court must first ask whether any act falls within the limitations period; thereafter, the court must ascertain whether the acts about which the plaintiff complains are part of the same actionable hostile work environment. *Vickers v. Powell*, 493 F.3d 186, 198-99 (D.C. Cir. 2007).

Beginning with the first part of this inquiry, at least twenty-one of the approximately eighty-one component acts at issue with respect to Graves' hostile work environment claims occurred on or after January 22, 2003, the time period relevant to Graves' Section 1981 claim, and at least seven occurred on or after February 2, 2005, the time period relevant to his Title VII claim. Pl.'s Resp. ¶ 3. Simply by way of example, both periods encompass the alleged physical altercation between Graves and a lieutenant, during which the lieutenant remarked that he was "going to kick [Graves'] white ass" and which resulted in Graves losing some of the function of his right arm and wrist and which allegedly led Graves to resign his employment with the Department. Def.'s Stmt. ¶ 10; Pl.'s Resp. ¶¶ 1, 3.79, 5. In short, because at least some of the component acts at issue fall within the applicable limitations period, Graves' hostile work

environment claims are timely and he may seek relief even for component acts that fall outside the limitations period, provided they are part of the same environment. *Morgan*, 536 U.S. at 105.

Turning now to the second part of the timeliness inquiry, the question that remains is just how far the hostile work environment at issue in this action extends in time and scope. The District argues, in cursory fashion and with minimal explication, that the incidents comprising Graves' hostile work environment claims are "each discrete incidents" and "involve[] different players, and different events."[4] Def.'s Mem. at 21-22. There are two fundamental problems with the District's argument.

First, and most importantly, the District discusses a total of *nine* incidents—specifically, the incidents that are explicitly mentioned in Graves' Complaint.[5] *See* Compl. ¶ 8. The District completely ignores at least *seventy* other incidents that Graves identified as part of his hostile work environment claims during the course of discovery in this action. *See* Pl.'s Resps. to Interrogs., Docket No. [24-1], at 7-18. The omission is fatal; having failed to account for all or even a majority of these incidents, the District's motion does not speak to the totality of the hostile work environment allegedly suffered by Graves. While the scope of Graves' claims is undeniably broad and may at times appear overwhelming, the District cannot simply elect to ignore the vast majority of incidents that collectively comprise the alleged hostile work environment challenged in this action.

---

[4] Strictly speaking, the District does not even make this argument in the context of its contention that Graves' claims are time-barred, but instead does so in suggesting that Graves cannot make out an actionable claim for hostile work environment. *See* Def.'s Mem. at 20-22.

[5] Three of the nine incidents fall within the limitations period for at least one of Graves' claims, meaning that the Court need not ask whether they are sufficiently related to the timely portion of Graves' hostile work environment claim.

Second, even the District's more limited arguments are unaccompanied by competent record support. For instance, the District argues that an unidentified number of the nine incidents it addresses in its moving papers involved "colleagues of lesser or equal rank," Def.'s Mem. at 23, but neither party has sought to supply this Court with any record evidence specifically identifying the relationship between the parties to the various incidents at issue. Indeed, it is not even entirely clear to the Court what Graves' rank was at the time of most of these incidents. This defect carries throughout the District's motion. In the end, the record has been so poorly developed by the parties that the Court is left largely in the dark as to the precise factual circumstances surrounding Graves' hostile work environment claims.

Simply put, the District has completely failed to discharge its burden of providing this Court with a basis for concluding that any of the incidents falling outside the limitations period are so distant in time or so different in kind that, as a matter of law, they cannot be said to be part of the same actionable hostile work environment claim. *Vickers*, 493 F.3d at 199. Meanwhile, the incidents are alleged to have occurred with some regularity over the entirety Graves' career, and share common themes of physical violence, facially discriminatory comments, and punitive assignments or unjustified disciplinary actions. That is, the suggestion that they comprise part of the same hostile work environment is at least plausible and, in the absence of specific and competent countervailing evidence, the Court cannot conclude otherwise. In any event, the critical point is that it is beyond cavil that at least some portion of Graves' hostile work environment claim is timely, which suffices to resolve the instant motion. To the extent the District intends to argue that certain component acts identified by Graves cannot be said to be part of the same actionable hostile work environment, the Court shall consider a proper motion *in*

*limine* to exclude evidence concerning such incidents in the context of pretrial proceedings. At this time, based on the extremely limited record created by the parties, the Court cannot say that Graves is precluded from recovering as to certain component acts of his hostile work environment claims on the basis that they are insufficiently related to the timely component acts.[6]

### 2. Graves' Commenced the Instant Action Within Ninety Days After Receiving a Right-to-Sue Letter from the EEOC

Title VII also requires plaintiffs to commence suit within ninety days after they receive a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1). In its opening memorandum, the District argued at some length that, with one critical exception, Graves failed to commence the instant action within ninety days after receiving right-to-sue letters in connection with his various charges of discrimination. Def.'s Mem. at 17-18. This argument, like many others made by the District in connection with the instant motion, turns on a fundamental misunderstanding as to the nature of the claims that Graves intends to pursue in this action. Because Graves indisputably commenced this action within ninety days after receiving a right-to-sue letter on the only charge of discrimination that is relevant to this case—specifically, the one that relates to his claims for hostile work environment—he has fully complied with Title VII's ninety-day time limitation.

During the course of his long career with the Department, Graves filed a total of four

_____

[6] To his credit, Graves, unprompted, observes that because his Section 1981 claim rests on a provision that did not exist until Congress enacted the Civil Rights Act of 1991, he may be precluded from recovering under Section 1981 for any part of the alleged hostile work environment that existed *before* the effective date of the Civil Rights Act of 1991. Pl.'s Opp'n at 30 n.85. The Court declines to address the issue in the absence of any responsive briefing from the District and the limited record created by the parties in connection with the instant motion. The Court merely raises the issue as one that may require further attention by the parties in the context of pretrial proceedings. To the extent the parties are able to resolve the issue by stipulation, they are strongly encouraged to do so.

charges of discrimination with the EEOC and he received four corresponding right-to-sue letters:

| NO. | DATE OF CHARGE OF DISCRIMINATION | DATE OF RIGHT TO SUE LETTER |
|-----|----------------------------------|------------------------------|
| 1 | October 4, 1994 | April 15, 1996 |
| 2 | July 20, 2000 | November 17, 2000 |
| 3 | August 1, 2005 | October 24, 2006 |
| 4 | October 17, 2005 | June 30, 2006 |

Def.'s Stmt. ¶¶ 12-15; Pl.'s Resp. ¶ 1. Graves commenced the instant action on January 22, 2007, meaning that he would be barred from securing relief on any charge of discrimination for which he received a right-to-sue letter on or before October 23, 2006. Consistent with this conclusion, the District conceded in its opening memorandum that Graves commenced this action in a timely manner insofar as his claims relate to the third of these four charges of discrimination—the August 1, 2005 charge of discrimination—but argued that his action is otherwise untimely. Def.'s Mem. at 17-18.

While that is undeniably true, it is also irrelevant. In this action, Graves simply does not seek relief in connection with any charge of discrimination other than the one he filed with the EEOC on August 1, 2005. Therein, Graves specifically alleged that he had "been subjected to a continuing pattern of insults and other on-the-job harassment because of [his] multi-racial background."[7] Def.'s Stmt. Ex. V at 1. That is, Graves' August 1, 2005 charge of discrimination

---

[7] Graves' other charges of discrimination do not contain a similar allegation that he was subjected to a hostile work environment while employed at the Department, but rather are targeted towards discrete acts of alleged discrimination or retaliation. *See* Def.'s Stmt. Exs. H, M, W. The District has never suggested that Graves' earlier charges of discrimination somehow encompassed a hostile work environment claim and that he should for some reason be barred from introducing evidence as to the events underlying those charges.

pertained to the same hostile work environment claims that he intends to pursue in the instant action. For this reason, the District's argument is misplaced; while other claims that Graves may have asserted against the District on the administrative level may hypothetically be time-barred under Title VII's ninety-day time limitation, that is not the case for the specific claims that Graves has asserted in this action. Graves filed a charge of discrimination alleging that he was subjected to a hostile work environment; he received a right-to-sue letter on that charge; and he commenced the instant action exactly ninety days later. He has fully complied with Title VII's ninety-day time limitation.

### B. The District Is Not Entitled to Summary Judgment on Graves' Section 1981 Claim on the Basis That He "Has Not Suffered an Impaired Contractual Relationship"

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens," a right extending to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). In this case, the District contends that Graves is absolutely precluded from securing relief "because he has not suffered an impaired contractual relationship"—specifically, the District argues that because Graves was serving by appointment pursuant to D.C. Code § 5-402(a), he did not have the sort of contractual relationship with the Department that is required to support a claim under Section 1981. Def.'s Mem. at 12-13. The argument is one frequently raised by the District, but as often as it has been raised, it has been rejected. *See, e.g.*, *Wilk v. District of Columbia*, 730 F. Supp. 2d 20, 23 n.3 (D.D.C. 2010) (applying Section 1981 to member of the Department); *Hamilton v. District of Columbia*, 720 F.

Supp. 2d 102, 114 (D.D.C. 2010) (applying Section 1981 to members the Department); *see also*

*Kennedy v. District of Columbia*, 730 F. Supp. 2d 20, 60 (D.D.C. 2007) (applying Section 1981

to employee of the Metropolitan Police Department serving by public appointment); *Dougherty*

*v. Barry*, 869 F.2d 605, 614-15 (D.C. Cir. 1989) (holding that members of the Department were

entitled to monetary relief under Section 1981); *Adams v. McDougal*, 695 F.2d 104, 108-09 (5th

Cir. 1983) (concluding that "§ 1981 provides a remedy . . . even if the desired position is

appointive and not for a definite period of time.").

Against this backdrop, the District offers up two authorities—the decision of the Supreme

Court in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80 (2006) and the decision of the

United States Court of Appeals for the District of Columbia Circuit in *Kizas v. Webster*, 707 F.2d

524, 541-43 (D.C. Cir. 1983), *cert. denied*, 464 U.S. 1042 (1984)—neither of which provides any

support for its position.[8]  The first case addresses the question of whether an individual who is

neither a party nor a third-party beneficiary to a contract may use that contract as the foundation

for a Section 1981 claim, *see Domino's Pizza*, 546 U.S. at 479-80, a question that simply has no

bearing here because Graves' Section 1981 claim rests on his direct employment relationship

with the Department.  The second case addressed the question of whether *federal* employees'

exclusive remedy for discrimination lies in Title VII, *Kizas*, 707 F.2d at 541-43, but it has long

been established that members of the Department "are the counterparts of employees of state and

---

[8]  The District also cites to two authorities standing for the proposition that under some circumstances actions may be maintained under Section 1981 even in the absence of contractual privity.  *See Moonblatt v. District of Columbia*, 572 F. Supp. 2d 15, 25 (D.D.C. 2008); *Mazloum v. District of Columbia Metro. Police Dep't*, 522 F. Supp. 2d 24, 39 (D.D.C. 2007).  Suffice it to say that neither case is factually analogous to the instant action and, if anything, both undermine the District's position.

local governmental units" and may therefore maintain an independent cause of action under Section 1981, *Torre v. Barry*, 661 F.2d 1371, 1373 (D.C. Cir. 1981).

The District has provided no support for its contention that Graves' status as an appointed public employee poses a *per se* bar to him securing relief under Section 1981. Because the overwhelming weight of authority says the exact opposite, the District is not entitled to summary judgment on this basis.

   **C.    The District Is Not Entitled to Summary Judgment Based on its Contention that the Hostile Work Environment Alleged by Graves Was Insufficiently "Severe or Pervasive"**

To prevail on a claim for hostile work environment, a plaintiff must establish that his "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 & 67 (1986)). The inquiry has an objective component and a subjective component: the environment must be one that a reasonable person in the plaintiff's position would find hostile or abusive, and the plaintiff must actually perceive the environment to be hostile or abusive. *Id.* In determining whether a hostile work environment exists, the district court must take into account "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

The District first contends that Graves "cannot succeed on a hostile work environment claim because the evidence adduced shows that his work environment was not severe or

pervasive enough to constitute a hostile work environment," and then offers a litany of disjointed and confusing arguments in support of that contention. Def.'s Mem. at 20. However, as has become a recurring theme, the District's contention suffers from at least two fundamental defects that cause it to fail at the outset.

First, as before, the District discusses only the *nine* incidents specifically identified in Graves' Complaint and completely ignores at least *seventy* other incidents that Graves identified as part of his hostile work environment claim during the course of discovery in this action. *Id.* at 21-22. An employment discrimination plaintiff, like any other, need not set forth "detailed factual allegations" in his complaint, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), only sufficient factual content to permit a "reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Significantly, when it comes to claims for hostile work environment, it is immaterial whether a single act of hostility or abuse is "actionable on its own." *Morgan*, 536 U.S. at 115. The unlawful employment action is the environment itself, viewed as an indivisible whole. Consistent with this framework, plaintiffs asserting a claim for hostile work environment are not required to plead "each element of their claim in their [c]omplaint," *Tucker v. Howard Univ. Hosp.*, __ F. Supp. 2d __, 2011 WL 52863, at *6 (D.D.C. Jan. 7, 2011), nor specify in exhaustive detail each and every component act comprising the allegedly hostile or abusive work environment. Instead, the plaintiff must set forth enough factual content to provide the defendant with fair notice of his claim and to render it plausible that his workplace was permeated with hostility or abuse that was sufficiently "severe or pervasive" to alter the conditions of his employment. *Harris*, 510 U.S. at 21; *see also Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (complaint

alleging "some conduct in support" of the plaintiff's hostile work environment claim held

sufficient to satisfy pleading standards).  In this case, Graves alleged in his Complaint that "[f]or

the entirety of his two decades of service with the Department, [he] was continuously subjected

to a hostile work environment" based upon his "mixed-race background."  Compl. ¶ 8.  While

Graves identified nine specific incidents supporting his claims in his Complaint, he clearly stated

that the list was illustrative and non-exhaustive.  *Id.* ¶¶ 8-9.  The District never sought to

challenge the sufficiency of these allegations through the vehicle of a motion to dismiss for

failure to state a claim.  Meanwhile, in the course of discovery, Graves identified at least seventy

other incidents as part of his hostile work environment claims in response to an interrogatory

posed by the District.  *See* Pl.'s Resps. to Interrogs. at 7-18.  Inexplicably, the District completely

ignored all these incidents in briefing the instant motion.  The omission is fatal; the relevant legal

standard requires reference to the "totality of the circumstances," but the District fails to address

all or even a majority of the component acts comprising the environment that Graves contends

was hostile or abusive.

Second, the record presently before the Court has been so poorly developed by the parties

that the Court frankly knows very little about the factual circumstances surrounding the

component acts comprising Graves' hostile work environment claim.  The Supreme Court has

observed that "the real social impact of workplace behavior often depends on a constellation of

surrounding circumstances, expectations, and relationships which are not fully captured by a

simple recitation of the words used or the physical acts performed."  *Oncale v. Sundowner*

*Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).  With a record such as this, the Court simply

cannot engage in the highly fact-intensive inquiry called for by the applicable legal standard.

Meanwhile, the District fails to fully acknowledge the nature of the component acts comprising Graves' hostile work environment claim. Well over a dozen incidents allegedly involved physical violence or a physical altercation of some sort, including one causing Graves to suffer a detached retina and a second causing him to lose some function of his right arm and wrist; even more allegedly involved what can only be described as racially charged comments; and others concern allegedly punitive work assignments or unjustified disciplinary actions. Pl.'s Resp. ¶¶ 3-5. If proven at trial, these component acts may very well suffice to "evidence [the] tangible workplace consequences, whether financial, physical or professional," *Baloch*, 550 F.3d at 1201, sufficient to support an actionable claim for hostile work environment. That question, however, is for another day. For purposes of the instant motion, it suffices to say that the District has fallen woefully short of discharging its burden of establishing that there is no genuine dispute requiring trial and that it is entitled to judgment as a matter of law on Graves' hostile work environment claims.

### D. The District Is Not Entitled to Summary Judgment Based on the Faragher-Ellerth *Affirmative Defense*

The District notes, in passing, that "a defendant employer may avoid vicarious liability for misconduct of a supervisor in a Title VII hostile environment case by establishing that it exercised reasonable care to prevent and correctly promptly any [] harassing behavior, and [] that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise," Def.'s Mem. at 23, which the Court assumes is a reference to the affirmative defense articulated by the Supreme Court in the companion cases of *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). However, "the *Faragher-Ellerth* defense is

explicitly an 'affirmative defense' as to which the employer has the burden of proof," *Jones v. D.C. Dep't of Corrections*, 429 F.3d 276, 279 (D.C. Cir. 2005), and apart from reciting the requirements of the defense, the District has not provided any argument—let alone competent evidence—in support of the contention that the defense has any applicability here. Therefore, summary judgment may not rest on this basis.

### E.    *Graves Has Never Sought to Pursue a Claim for Retaliation in this Action*

Finally, the District argues at considerable length that Graves cannot establish that his transfer to Engine Company No. 8 on or about September 18, 2005 was retaliatory. Def.'s Mem. at 23-25. The argument is a non-starter; Graves simply has never asserted a claim for retaliation in this action. *See* Compl. ¶¶ 11-16. Indeed, in response to the District's argument, Graves expressly states that he "does not contend [] that the 2005 transfer . . . was, by itself, actionable," and clarifies that he only considers the transfer to be part of his broader hostile work environment claim. Pl.'s Opp'n at 31 n.87. Based on this explicit concession, there is no dispute for the Court to resolve, and the Court shall deny as moot the District's Motion for Summary Judgment insofar as it seeks dismissal of a non-existent claim for retaliation.

## V.  CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Therefore, and for the reasons stated above, the Court shall deny the District's [20] Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

Date:   April 14, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**

United States District Judge