# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEPHEN H. GRAVES,

     Plaintiff,

     v.

DISTRICT OF COLUMBIA,

     Defendant.

Civil Action No. 07-00156 (CKK)

## MEMORANDUM OPINION AND ORDER
(November 29, 2011)

Plaintiff Stephen H. Graves ("Graves") brings this employment discrimination action against Defendant, the District of Columbia (the "District"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and § 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), claiming that he was subjected to a racially hostile work environment during the course of his two-decade career with the District's Fire and Emergency Services Department. The action is now in the pretrial stage of litigation and there is a single motion before the Court: the District's [38] Motion in Limine. Upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, the motion shall be GRANTED-IN-PART and HELD-IN-ABEYANCE-IN-PART.[1]

---

[1] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Mem. of P. & A. in Supp. of Def. District of Columbia's Mot. in Limine ("Def.'s Mem."), ECF No. [38]; Pl.'s Opp'n to Def. District of Columbia's Mot. in Limine ("Pl.'s Opp'n"), ECF No. [43]; District of Columbia's Reply to Pl.'s Opp'n to its Mot. in Limine ("Def.'s Reply"), ECF No. [44]. In an exercise of its discretion, the Court finds that holding oral argument on the motion would not assist the Court in rendering its decision at this time. *See* LCvR 7(f).

## I. BACKGROUND

Graves, who self-identifies as an individual of "mixed race," was formerly employed by the District's Fire and Emergency Services Department. Over the course of his two-decade career, which extended from September 5, 1985 through February 12, 2006, he held a variety of positions and worked at a number of locations. In this action, Graves contends that he was subjected to a racially hostile work environment throughout his career.

During the course of discovery, Graves identified a total of eighty-one separate incidents as the component acts comprising the alleged hostile work environment at issue. *See* Pl.'s Resps. to Interrogs., ECF No. [24-1], ¶ 12; Pl.'s Suppl. Resps. to Interrogs., ECF No. [24-2], ¶ 12. According to Graves, the first contributing incident occurred within days of his hiring, on or about September 19, 1985, and the final contributing incident occurred shortly before the termination of his employment, on or about September 18, 2005. The eighty-one incidents he has identified are of a wide variety and cut a broad swath: some involve physical violence; others involve facially discriminatory comments by subordinates, co-workers, and supervisors; and still others involve allegedly punitive assignments or unjustified disciplinary actions. Together, they implicate literally dozens of actors working at various locations.

Graves commenced this action on January 22, 2007. *See* Compl., ECF No. [1]. Following the conclusion of discovery, the District filed a Motion for Summary Judgment, which focused in large part on the timeliness of Graves' suit. *See* Def. District of Columbia's Mot. for Summ. J., ECF No. [20]. The Court denied the District's motion on April 14, 2011. *See Graves v. District of Columbia*, 777 F. Supp. 2d 109 (D.D.C. 2011). In so doing, the Court highlighted several deficiencies in the District's approach. Most importantly, "nearly all of the arguments

2

tendered by the District in support of its motion [were] premised, at least to some degree, on the erroneous assumption that Graves intend[ed] to pursue individual claims of discrimination for each of the employment-related incidents identified in his Complaint." *Id.* at 111. However, Graves "made it clear that he only intends to pursue two factually coextensive hostile work environment claims in this action, one arising under Title VII and a second arising under Section 1981, and he expressly disavow[ed] an intention to pursue individual claims of discrimination for each separate incident contributing to the allegedly hostile work environment." *Id.* "As a result, the vast majority of the District's motion [spoke] to claims that simply are not at issue in this action." *Id.* Similarly problematic, of the "eighty-one incidents that collectively comprise the hostile work environment allegedly suffered by Graves during his employment, only a handful receive[d] even passing mention in the District's moving papers," which left "altogether unaddressed over seventy [] incidents that Graves identified as part of his hostile work environment claim during the course of discovery." *Id.* "[H]aving failed to account for all or even a majority of these incidents, the District's motion [did] not speak to the totality of the hostile work environment allegedly suffered by Graves." *Id.* In short, the District's Motion for Summary Judgment was woefully inadequate to challenge the sufficiency of Graves' hostile work environment claims.

Upon the resolution of the District's Motion for Summary Judgment, the Court and the parties proceeded to the pretrial stage of litigation. In order to "narrow the evidentiary issues at trial," the Court authorized the parties to file motions *in limine*. Pretrial Scheduling and Procedures Order (Aug. 18, 2011), ECF No. [37], at 6. The District filed the instant Motion in Limine on October 7, 2011. Graves filed his opposition on November 3, 2011. The District filed

3

its reply on November 21, 2011.

## II.  LEGAL STANDARD

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly contemplate motions *in limine*, the practice of allowing such motions has developed over time "pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Consistent with the historical origins of the practice, motions in *limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990).  Broadly speaking, the Federal Rules of Evidence permit the admission of "relevant evidence"—that is, evidence that "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," FED. R. EVID. 401[2]—provided it is not otherwise excluded by the Rules, the Constitution of the United States, or an Act of Congress, FED. R. EVID. 402, and its probative value is not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," FED. R. EVID. 403.

In light of their limited purpose, motions *in limine* "should not be used to resolve factual disputes," which remains the "function of a motion for summary judgment, with its accompanying and crucial procedural safeguards."  *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008); *see also Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) ("[M]otions in limine are meant to deal with discrete

---

[2]  In this Memorandum Opinion and Order, the Court shall reference the amended Federal Rules of Evidence that, absent contrary Congressional action, will become effective on December 1, 2011 and will apply at the trial in this action.

evidentiary issues related to trial, and are not another excuse to file dispositive motions disguised as motions in limine.") (internal quotation marks and citation omitted). In other words, "[f]actual questions should not be resolved through motions in limine," *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 871 (W.D. Mich. 2008) (citation omitted), nor is a motion *in limine* a "vehicle for a party to ask the Court to weigh the sufficiency of the evidence," *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008). Rather, parties should target their arguments to demonstrating why certain items or categories of evidence should (or should not) be introduced at trial, and direct the trial judge to specific evidence in the record that would favor or disfavor the introduction of those particular items or categories of evidence. *U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 19 (D.D.C. 2008). In short, motions *in limine* are a means for arguing why "evidence should or should not, *for evidentiary reasons*, be introduced at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 18 (D.D.C. 2010) (emphasis in original).

In deference to their familiarity with the details of the case and greater experience in evidentiary matters, trial judges are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing any factors against admissibility. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial. *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); *accord Rosemann v. Roto-Die, Inc.*, 377 F.3d 897, 902 (8th Cir. 2004); *United States v. Layton*, 720 F.2d 548, 553 (9th Cir. 1983), *cert. denied*, 465 U.S. 1069 (1984), *and overruled on*

5

*other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008).  The trial judge has

the "discretion to rule *in limine* or to await developments at trial before ruling."  Stephen A.

Saltzburg *et al.*, FEDERAL RULES OF EVIDENCE MANUAL § 103.02[13] (9th ed. 2006).  "[I]n some

instances it is best to defer rulings until trial, [when] decisions can be better informed by the

context, foundation, and relevance of the contested evidence within the framework of the trial as

a whole."  *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011) (citation omitted).

### III.  DISCUSSION

Through its [38] Motion in Limine, the District asks the Court to preclude Graves from

introducing evidence at trial concerning a total of forty-four of the eighty-one component acts

that he originally identified as supporting his hostile work environment claims in the course of

discovery.  Of these forty-four acts, Graves represents that he will not seek to introduce evidence

concerning a total of twenty-eight.  *See infra* Part III.A.  As for the sixteen acts that still remain at

issue, the Court shall require Graves to make an offer of proof demonstrating that there is a

factual basis for the trier of fact to infer that the incidents were motivated by a discriminatory

animus and are part of the same hostile work environment.  *See infra* Part III.B.

    A.    *Graves Has Conceded the District's Motion as to Twenty-Eight Component Acts*

The District's Motion in Limine asks the Court to preclude Graves from introducing

evidence at trial concerning a total of forty-four component acts that he originally identified as

supporting his hostile work environment claims in the course of discovery.  *See* Def.'s Mem. at

5-9.  In opposition, Graves represents that he will not introduce evidence as to twenty-eight of the

acts challenged by the District.  *See* Pl.'s Opp'n at 2-3.  Based on this explicit concession, the

Court shall GRANT the District's [38] Motion in Limine as conceded with respect to the

following twenty-eight acts:[3]

| | |
|---|---|
| (1) | Incident No. 9 — March 1, 1987; |
| (2) | Incident No. 15 — Approx. 1988; |
| (3) | Incident No. 17 — Nov. 1989-2005; |
| (4) | Incident No. 23 — May 5, 1991; |
| (5) | Incident No. 24 — July 4, 1992; |
| (6) | Incident No. 25 — July 7, 1993; |
| (7) | Incident No. 27 — Mar. 2, 1994; |
| (8) | Incident No. 29 — May 19, 1994; |
| (9) | Incident No. 30 — Feb. 12, 1995; |
| (10) | Incident No. 31 — Approx. 1995; |
| (11) | Incident No. 32 — Apr. 2, 1995; |
| (12) | Incident No. 33 — Dec. 31, 1995; |
| (13) | Incident No. 36 — July 12, 1997; |
| (14) | Incident No. 38 — Jan. 7, 1998; |
| (15) | Incident No. 40 — Feb. 7, 1998; |
| (16) | Incident No. 41 — May 24, 1998; |
| (17) | Incident No. 42 — Nov. 7, 1998; |
| (18) | Incident No. 44 — June 1, 1999; |

---

[3] In this Memorandum Opinion and Order, the Court shall identify component acts by the number and approximate date assigned to them by Graves in his opposition to the District's Motion for Summary Judgment. *See* Pl.'s Opp'n to Def. District of Columbia's Mot. for Summ. J., ECF No. [24], at 2-24.

(19)    Incident No. 45 — Sept. 10, 1999;

(20)    Incident No. 51 — Aug. 2000;

(21)    Incident No. 53 — Apr. 28, 2001;

(22)    Incident No. 59 — June 16, 2002;

(23)    Incident No. 60 — Dec. 2, 2002;

(24)    Incident No. 62 — Apr. 16, 2003;

(25)    Incident No. 64 — Sept. 10, 2003;

(26)    Incident No. 75 — Feb. 5, 2005;

(27)    Incident No. 80 — July 4, 2005; and

(28)    Incident No. 81 — Aug. 1, 2005.

In light of his explicit concession, Graves shall be PRECLUDED from introducing evidence as to the foregoing twenty-eight component acts at trial.

B.    *Graves Shall Be Required to Make an Offer of Proof as to the Sixteen Component Acts that Remain at Issue*

As for the sixteen component acts that remain at issue, the District argues, in essence, that no reasonable trier of fact could conclude that the acts are indicative of race-based discrimination and/or part of the same actionable hostile working environment.  *See* Def.'s Mem. at 5.  To prevail on a claim for hostile work environment, a plaintiff must establish that his "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 & 67 (1986)).  In determining whether a hostile work environment exists, the trier of fact must take into account "the totality of the circumstances,

8

including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). The District's Motion in Limine turns on two principles relating to this overarching concept, both of which circumscribe the reach of hostile work environment claims.

First, evidence that bears no connection to the plaintiff's protected status cannot support a hostile work environment claim. *Harris v. Wackenhut Servs., Inc.*, 419 F. App'x 1, 2 (D.C. Cir. 2011) (*per curiam*) (citing, *inter alia*, *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999)). Therefore, courts should exclude from consideration employment-related actions that "lack a linkage" to discrimination. *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)); *accord Baloch v. Norton*, 517 F. Supp. 2d 345, 363 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008). But incidents need not always bear "overt discriminatory overtones" to have a linkage to discrimination. *Hutchinson v. Holder*, __ F. Supp. 2d __, 2011 WL 4537878, at *17 (D.D.C. Oct. 3, 2011) (citing *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C. Cir. 1985), *abrogated on other grounds by Stevens v. Dep't of Treasury*, 500 U.S. 1 (1991)). Rather, "facially neutral incidents may . . . be considered as part of the 'totality of the circumstances' supporting a plaintiff's hostile work environment claim" if a "trier of fact could reasonably conclude that they were, in fact, based on the plaintiff's [protected status]." *Mason v. Geithner*, __ F. Supp. 2d __, 2011 WL 4014300, at *29 (D.D.C. Sept. 12, 2011) (citing *Alfano*, 294 F.3d at 378). In other words, the plaintiff must proffer a factual basis for inferring that the incidents were motivated by a discriminatory animus. *Id.*

Second, so long as at least one act "contributing to the claim occurs within the filing

period, the entire time period of the hostile environment may be considered . . . for the purposes

of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see

also Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 638 n.7 (2007) ("[A]t least

some of the discriminatorily motivated acts predicate to a hostile work environment claim [must]

. . . occur within the charging period."), *superseded by statute in part*, Lilly Ledbetter Fair Pay

Act of 2009, Pub. L. No. 11-2, 123 Stat. 5 (2009).  However, "the acts about which [the plaintiff]

complains [must be] part of the same actionable hostile work environment practice." *Morgan*,

536 U.S. at 120.  The trier of fact "need not consider an alleged incident if it 'had no relation to

the [other] acts, or for some other reason . . . was not part of the same hostile work environment

claim.'"  *Vickers v. Powell*, 493 F.3d 186, 199 (D.C. Cir. 2007) (quoting *Morgan*, 536 U.S. at

118) (notations in original).

Citing these two principles, the District urges the Court to preclude Graves from

introducing evidence as to the sixteen component acts that remain at issue on the basis that no

reasonable trier of fact could conclude that the acts are indicative of race-based discrimination

and/or part of the same actionable hostile working environment.  Presented with these arguments,

the Court is mindful that motions *in limine* are designed to address discrete evidentiary issues

related to trial and are not a vehicle for resolving factual disputes or testing the sufficiency of the

plaintiff's evidence.  *See supra* Part II.  In this regard, the Court is concerned that the District's

motion falls on the wrong side of the line between a proper motion *in limine* and a disguised

motion for summary judgment.  However, before reaching this issue, there is a threshold matter

that should first be addressed.  In this case, the factual record "has been so poorly developed by

the parties that the Court frankly knows very little about the factual circumstances surrounding

the component acts comprising Graves' hostile work environment claim[s]." *Graves*, 777 F. Supp. 2d at 122.  That observation, first made in the context of resolving the District's Motion for Summary Judgment, holds no less true today.  Simply put, the factual record is so skeletal and incomplete that it is nearly impossible for the Court to determine whether the District's arguments are amenable to resolution on a motion *in limine*.

When the probative value of evidence is called into doubt at the motions *in limine* stage, the trial judge may exercise her discretion to require the proponent to make an offer of proof in advance of trial.  *See Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1197 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 853 (1986); *see generally* 21 Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 5040.2 (2d ed. 1987).  That is especially true where, as here, "neither party has directed the court to a specific exhibit or item of evidence whose [sic] admissibility is at issue." *Kuiper v. Givaudan, Inc.*, 602 F. Supp. 2d 1036, 1047 (N.D. Iowa 2009).  The offer of proof is designed to inform the trial judge "what the proponent expect[s] to prove by the evidence, thereby enabl[ing] the [trial judge] to determine whether the evidence would be admissible for any purpose." Stephen A. Saltzburg *et al.*, FEDERAL RULES OF EVIDENCE MANUAL § 103.02[7] (9th ed. 2006).  In this case, given the sparse factual record created by the parties, the Court considers it prudent to exercise its discretion to require Graves to make an offer of proof as to the sixteen component acts that remain at issue.  Indeed, based on its past experience with pretrial matters, the Court is mindful that knowing the factual predicate for a party's claims is essential to evaluating any objections to anticipated witnesses and exhibits.  In other words, even separate and apart from the District's Motion in Limine, the Court is confident that requiring Graves to make an offer of proof will assist both the Court and the parties in

evaluating the Joint Pretrial Statement and associated objections, which are due to be filed with the Court on January 10, 2012.

Accordingly, for each of the following sixteen acts, Graves must make an offer of proof demonstrating that there is a factual basis for the trier of fact to infer that the incident was (1) motivated by a discriminatory animus and (2) part of the same hostile work environment:

(1)     Incident No. 11 — Approx. 1987;

(2)     Incident No. 18 — Dec. 20, 1989;

(3)     Incident No. 19 — May 8, 1990;

(4)     Incident No. 20 — May 10, 1990;

(5)     Incident No. 21 — May 11, 1990;

(6)     Incident No. 22 — July 15, 1990;

(7)     Incident No. 34 — July 19, 1997;

(8)     Incident No. 35 — Jan. 17, 1998;

(9)     Incident No. 37 — Oct. 13, 1997;

(10)    Incident No. 48 — Dec. 19, 1999;

(11)    Incident No. 49 — Dec. 1999;

(12)    Incident No. 61 — Mar. 10. 2003;

(13)    Incident No. 65 — Approx. 2004;[4]

---

[4]  The Court notes that the District argues that this incident (Incident No. 65 — Approx. 2004) cannot be considered as part of an actionable hostile work environment because it does not involve something that Graves personally experienced. *See* Def.'s Mem. at 10; Def.'s Reply at 3. From his opposition, it is unclear whether Graves even intends to claim that the trier of fact should consider the incident as part of his hostile work environment or whether he instead merely sees it as evidence of the District's knowledge. *See* Pl.'s Opp'n at 10.  If the former, Graves must explain how the incident is probative of his personal experience.

(14)    Incident No. 70 — Mar. 6, 2004;

(15)    Incident No. 72 — Jan. 10, 2005; and

(16)    Incident No. 73 — Jan. 18, 2005.

As to these sixteen acts, the District's [38] Motion in Limine shall be HELD-IN-

ABEYANCE pending further order of the Court.

## IV.  CONCLUSION AND ORDER

For the reasons set forth above, it is, this 29th day of November, 2011, hereby

**ORDERED** that the District's [38] Motion in Limine is **GRANTED-IN-PART** and

**HELD-IN-ABEYANCE-IN-PART**.  Specifically:

(a)    The motion is **GRANTED** as conceded as to the following twenty-eight

component acts:

(1)    Incident No. 9 — March 1, 1987;

(2)    Incident No. 15 — Approx. 1988;

(3)    Incident No. 17 — Nov. 1989-2005;

(4)    Incident No. 23 — May 5, 1991;

(5)    Incident No. 24 — July 4, 1992;

(6)    Incident No. 25 — July 7, 1993;

(7)    Incident No. 27 — Mar. 2, 1994;

(8)    Incident No. 29 — May 19, 1994;

(9)    Incident No. 30 — Feb. 12, 1995;

(10)    Incident No. 31 — Approx. 1995;

(11)    Incident No. 32 — Apr. 2, 1995;

13

(12)     Incident No. 33 — Dec. 31, 1995;

(13)     Incident No. 36 — July 12, 1997;

(14)     Incident No. 38 — Jan. 7, 1998;

(15)     Incident No. 40 — Feb. 7, 1998;

(16)     Incident No. 41 — May 24, 1998;

(17)     Incident No. 42 — Nov. 7, 1998;

(18)     Incident No. 44 — June 1, 1999;

(19)     Incident No. 45 — Sept. 10, 1999;

(20)     Incident No. 51 — Aug. 2000;

(21)     Incident No. 53 — Apr. 28, 2001;

(22)     Incident No. 59 — June 16, 2002;

(23)     Incident No. 60 — Dec. 2, 2002;

(24)     Incident No. 62 — Apr. 16, 2003;

(25)     Incident No. 64 — Sept. 10, 2003;

(26)     Incident No. 75 — Feb. 5, 2005;

(27)     Incident No. 80 — July 4, 2005; and

(28)     Incident No. 81 — Aug. 1, 2005.

Graves is **PRECLUDED** from introducing evidence concerning the foregoing twenty-eight component acts at trial.

(b)     The motion is **HELD-IN-ABEYANCE** pending further order of the Court as to the following sixteen component acts:

(1)     Incident No. 11 — Approx. 1987;

14

(2)      Incident No. 18 — Dec. 20, 1989;

(3)      Incident No. 19 — May 8, 1990;

(4)      Incident No. 20 — May 10, 1990;

(5)      Incident No. 21 — May 11, 1990;

(6)      Incident No. 22 — July 15, 1990;

(7)      Incident No. 34 — July 19, 1997;

(8)      Incident No. 35 — Jan. 17, 1998;

(9)      Incident No. 37 — Oct. 13, 1997;

(10)     Incident No. 48 — Dec. 19, 1999;

(11)     Incident No. 49 — Dec. 1999;

(12)     Incident No. 61 — Mar. 10. 2003;

(13)     Incident No. 65 — Approx. 2004;

(14)     Incident No. 70 — Mar. 6, 2004;

(15)     Incident No. 72 — Jan. 10, 2005; and

(16)     Incident No. 73 — Jan. 18, 2005.

It is **FURTHER ORDERED** that, by no later than **January 10, 2012**, for **each** of the sixteen incidents identified in Paragraph (b), above, Graves shall make an offer of proof demonstrating that there is a factual basis for the trier of fact to infer that the incident was (1) motivated by a discriminatory animus **and** (2) part of the same actionable hostile work environment. Graves shall file his offer of proof as a separate part of the parties' Joint Pretrial Statement due to be filed on the same date.

It is **FURTHER ORDERED** that, in his Statement of Claims due to be filed as part of

the parties' Joint Pretrial Statement on **January 10, 2012**, Graves shall identify **each and every one** of the component acts that he contends comprise the alleged hostile work environment at issue in this action, excluding those acts identified in Paragraph (a), above.  The identification must include a sufficiently detailed description of each component act to provide the District and the Court with notice of the contours of each component act.

It is **FURTHER ORDERED** that, apart from the submissions specifically called for in this Memorandum Opinion and Order, the Court neither requires nor wants additional briefing from the parties in connection with the portion of the District's [38] Motion *in Limine* that has been held-in-abeyance.  In the event the Court determines that additional briefing is appropriate, it shall so notify the parties.

Date:   November 29, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
